Filed 9/22/21  P. v. Lee CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRIAELL MICHAEL LEE,<br><br>Defendant and Appellant. | B309734<br><br>(Los Angeles County<br>Super. Ct. No. VA081176) |

APPEAL from an order of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# INTRODUCTION

Briaell Michael Lee appeals from the trial court's order denying his petition under Penal Code section 1170.95 (Section 1170.95) to vacate his conviction for the second degree murder of Mario Larios. At trial, Lee admitted -- both in a recorded police interview played for the jury, and through his counsel's closing argument -- that he had fatally shot Larios. In a prior opinion, we affirmed his murder conviction, along with a sentence enhancement imposed as a result of the jury's finding that Lee caused death or great bodily injury by personally and intentionally discharging a firearm (the firearm enhancement). (*People v. Lee* (Oct. 27, 2014, No. B252982) [nonpub. opn.] 2014 Cal.App.Unpub. LEXIS 7690.) In his petition, Lee alleged he had been convicted under the felony murder rule or the natural and probable consequences doctrine, as required to establish eligibility for relief under Section 1170.95. In response, the People argued Lee was ineligible for relief because the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine, and because the record of conviction showed that the jury found Lee was Larios's actual killer. Without appointing counsel to represent Lee (as he had requested), or holding a hearing, the trial court denied the petition. The court determined, in reliance on our prior opinion, that Lee was the actual killer, and that he therefore had not made a prima facie showing of eligibility for relief.

On appeal, Lee's appointed counsel filed a brief raising no issues and asking this court to independently review the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Lee filed a supplemental brief, in which he raised no issues concerning the order denying his petition to vacate his murder conviction, but requested relief from the firearm enhancement. After the briefs were filed, our Supreme Court issued its opinion in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), clarifying the procedure required under Section 1170.95.

Having independently reviewed the record, we conclude that although the trial court erred by failing to afford Lee the assistance of counsel before denying his petition, the error was harmless. We further conclude that Lee has not shown he is entitled to relief from the firearm enhancement, or to the trial court's consideration of such relief on remand. Accordingly, we affirm.

## BACKGROUND

### A. *Lee's Conviction*[1]

In 2005, Lee and codefendant Cimarron Bernard Bell were charged with the murder of three men, including Mario Larios. At Lee's trial, Bell's girlfriend, Neysa Wyatt, testified that on January 26, 2004, she heard Bell agree to

---

[1] The facts in this subsection are taken from the record in Lee's prior appeal (of which we have taken judicial notice, on Lee's request), including our opinion in that appeal. (*People v. Lee, supra,* 2014 Cal.App.Unpub. LEXIS 7690 at *1-*9.)

meet with a prospective buyer of his Chevy Monte Carlo, which Bell had advertised for sale at a price well below market value. The buyer -- Larios, as suggested by phone records and other evidence -- said he would be driving a white "Benz." Four days later, the bodies of Larios and two other men were found in a white Mercedes Benz near Bell's house. Wyatt saw a news report about the bodies' discovery, and questioned Bell, who reported that he had advertised the Monte Carlo for sale as a ruse to kill the victims for their money. Bell told Lee to wait in the back room of Bell's house until Bell returned with the potential buyer and to come out if called. Bell persuaded the prospective buyer (Larios) and his two companions to come to his house, where he started shooting at them. Larios tried to escape, and Bell yelled at Lee to "take [Larios] out." Lee fired two shots but missed. Bell pointed his gun at Lee and told him, "[I]f you don't take him out, I am taking you out." Lee fatally shot Larios.

Lee was interviewed by the police on three occasions. In the first two interviews, Lee admitted being present during the shootings, but denied shooting anyone. In the last interview, Lee stated that he was attempting to leave during the shooting when Bell put a gun in his hand and pointed another gun at him. He admitted that in response to Bell's threat, he fatally shot Larios. Lee acknowledged that "a murder is a murder. If I shoot this dude, I killed him."

The jury was not instructed on the felony murder rule or the natural and probable consequences doctrine. During closing arguments, Lee's counsel admitted that Lee shot

4

Larios, but argued that he did so under duress, purportedly negating intent to kill. In rebuttal, the prosecutor argued, "He said, 'I shot Mr. Larios because if I didn't shoot him, I was going to get killed too.' That's intent to kill."

The jury found Lee guilty of the second degree murder of Larios, and found true an allegation that Lee caused death or great bodily injury by personally and intentionally discharging a firearm. The jury acquitted Lee of the murders of the other victims. The trial court sentenced Lee to 15 years to life for the murder, plus 25 years to life for the firearm allegation (Pen. Code, § 12022.53, subd. (d)).

Lee appealed the judgment. After his appointed appellate counsel filed a brief asking us to independently review the record pursuant to *Wende, supra*, 25 Cal.3d 436, Lee filed a supplemental brief. Rejecting his contentions and finding no arguable issue after an independent review of the record, we affirmed.

### B. *Lee's Petition*

In September 2020, Lee filed a petition in propria persona for postconviction relief under Section 1170.95. Lee's petition was filed on a set of instructions, evidently published by a nonprofit organization, for filing a petition under the statute. By circling items in these instructions, Lee alleged that he was convicted at trial "pursuant to the felony murder rule or the natural and probable consequences doctrine," and that under the law as modified by Senate Bill No. 1437 (SB 1437), he could not now be convicted of murder.

5

In an attached declaration, he asserted that he was neither the actual killer, nor an aider and abettor who acted with intent to kill, nor a major participant in an underlying felony who acted with reckless indifference to human life. He requested the appointment of counsel.

Along with his petition, Lee submitted two jury instructions delivered at his trial: (1) CALJIC No. 8.11, defining malice aforethought; and (2) CALJIC No. 17.19.5, setting forth the elements of the allegation that Lee caused death or great bodily injury by personally and intentionally discharging a firearm. Lee underlined the phrase "natural consequences" in the former instruction, and the phrase "natural and probable consequence" in the latter.[2]

In response to Lee's petition, the People argued Lee was ineligible for relief because the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine, and because the record of conviction showed that the jury found Lee was Larios's actual killer. Without appointing counsel to represent Lee or holding a hearing, the trial court denied the petition, stating, "The Court has reviewed the opinion from the Court of Appeal in this matter and the facts from that opinion are as follows:

---

[2] Lee also underlined the following advisement in the nonprofit's instructions for filing a petition: "[T]he phrase 'natural and probable consequence' appears in a lot of other jury instructions that do *not* convey the theory of murder as a natural and probable consequence of aiding and abetting a target crime." (Italics added.)

6

[¶] Petitioner's co-defendant hatched a plan whereby the co-defendant would offer to sell a vehicle below market value and then kill the buyer and take the money. Co-defendant advertised a Monte Carlo for sale below market value. A buyer and two friends met the co-defendant at a gas station to view the car. The buyer wished to buy the car. The co-defendant arranged for everyone to go to his house to complete the sale. Petitioner was waiting at the house and was armed. At the house, co-defendant started shooting the buyer and his friends. One of the friends attempted to escape. Co-defendant called to Petitioner to shoot the fleeing friend. Petitioner shot and killed the person. [¶] Petitioner was the killer. He is not eligible for relief under [section] 1170.95 of the Penal Code. He has not made a prima facie case for relief." Lee timely appealed.

## DISCUSSION

### A. *Section 1170.95*

Neither Lee nor his counsel raised any issue concerning the trial court's order denying Lee's petition to vacate his murder conviction under Section 1170.95. Although not constitutionally required to do so, we have independently reviewed the record. (See *People v. Freeman* (2021) 61 Cal.App.5th 126, 133 ["Published decisions by our courts of appeal uniformly agree that *Wende*[] does not require independent review of appeals from post-judgment orders in criminal proceedings, though they are split on whether in certain contexts a court should nonetheless

7

exercise discretion independently to review a summary denial"].) As explained below, we conclude that although the trial court erred by failing to afford Lee the assistance of counsel before denying his petition, the error was harmless.

### *1. Principles*

"Before [SB] 1437, the felony-murder rule and the natural and probable consequences doctrine were exceptions to the actual malice requirement [for murder liability]. The felony-murder rule made 'a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state.' . . . The natural and probable consequences doctrine made 'a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.'" (*People v. Johns* (2020) 50 Cal.App.5th 46, 57-58.) SB 1437 amended Penal Code sections 188 and 189 to eliminate murder liability under the natural and probable consequences doctrine, and to narrow the felony murder rule. (See *People v. Johns*, *supra*, 50 Cal.App.5th at 58-59; Pen. Code, §§ 188, subd. (a)(3), 189, subd. (e); Stats. 2018, ch. 1015, §§ 2-3).

SB 1437 also enacted Section 1170.95. (See Stats. 2018, ch. 1015, § 4.) This section permits a defendant who was convicted of felony murder or murder under a natural and probable consequences theory, but who could not be

8

convicted of murder following SB 1437's changes to the law, to petition the sentencing court to vacate the conviction. (Pen. Code, § 1170.95, subd. (a).) After ascertaining that the petition includes certain basic information, the court must appoint counsel for the petitioner (if requested), receive the People's response to the petition, allow the petitioner to file a reply, and determine whether the petitioner has made a prima facie showing of entitlement to relief. (*Id.*, § 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at 961-970.) If the court determines the petitioner has made a prima facie showing, it must issue an order to show cause. (Pen. Code, § 1170.95, subd. (c).) If the parties do not thereafter stipulate that the petitioner is entitled to relief, the court must hold a hearing and, if the prosecution fails to prove the petitioner's ineligibility for relief beyond a reasonable doubt, vacate the petitioner's murder conviction. (*Id.*, § 1170.95, subd. (d).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at 972.) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id.* at 971.)

A trial court's failure to appoint counsel before denying a petition under Section 1170.95 is reviewed for prejudice under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis, supra,* 11 Cal.5th at 973-974.) "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Id.* at 974.)

### *2. Analysis*

Guided by our Supreme Court's recent opinion in *Lewis*, we conclude the trial court erred by failing to afford Lee the assistance of counsel before denying the petition. (See *Lewis, supra,* 11 Cal.5th at 961-970.) We further conclude the error was harmless, as there is no reasonable probability that had Lee been afforded the assistance of counsel, he would have made a prima facie showing of eligibility for relief. (See *id.* at 973-974.) The record of conviction "necessarily" would have "inform[ed] the trial court's prima facie inquiry . . . ." (*Id.* at 971.) As explained below, counsel could not have made a prima facie showing on Lee's behalf in the face of the record of conviction, because it shows Lee is ineligible for relief as a matter of law. (See *ibid.* ["'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the

10

petition," then "the court is justified in making a credibility determination adverse to the petitioner""'].)

The record of conviction refuted Lee's allegation that he had been convicted under the felony murder rule or the natural and probable consequences doctrine. The jury instructions given at his trial omitted any instruction on either theory. In light of the omission of such instructions, Lee is ineligible for relief under Section 1170.95 as a matter of law. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 review granted, Sept. 23, 2020, S263939 ["the jury instructions in this case demonstrate, on their face and as a matter of law, that Soto was not and could not have been convicted of second degree murder under the natural and probable consequences doctrine. This is so because the jurors were not provided any instruction on which they could have found Soto guilty of murder under that doctrine"]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review granted Feb. 24, 2021, S266336 ["no instructions were given on felony murder or murder under the natural and probable consequences doctrine. Thus, Daniel is not '[a] person convicted of felony murder or murder under a natural and probable consequences theory,' and he is therefore ineligible for relief as a matter of law" (fn. omitted)].)

Lee's ineligibility for relief is further confirmed by his admissions (both in a police interview and through his counsel's closing argument) that he fatally shot Larios, together with the jury's finding that Lee caused death or great bodily injury by personally and intentionally

11

discharging a firearm.  In light of Lee's admissions and the jury's finding on the firearm allegation, Lee's murder conviction necessarily reflected a finding that Lee was Larios's actual killer.  Because Lee was convicted as the actual killer, he is ineligible for relief under Section 1170.95 as a matter of law.  (See Pen. Code, § 1170.95, subd. (a)(3) [petitioner is eligible for relief only if, inter alia, "[t]he petitioner could not [now] be convicted of first or second degree murder because of changes to Section 188 or 189 made [by SB 1437]"]; *Lewis, supra,* 11 Cal.5th at 959 ["the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who [inter alia] is not the actual killer'"].)

We conclude it is not reasonably probable Lee would have made a prima facie showing of eligibility for relief had he been afforded the assistance of counsel.  (See *People v. Edwards* (2020) 48 Cal.App.5th 666, 674-675, review granted July 8, 2020, S262481 [trial court's failure to appoint counsel before denying Section 1170.95 petition was harmless "under any standard of review," where "a review of the readily available record of conviction (charging information and jury instructions) show[ed petitioner] *could not* meet the statutory prerequisites"]; *People v. Daniel, supra,* 57 Cal.App.5th at 678, rev.gr. [trial court's failure to appoint counsel before denying petition was harmless under *Watson* standard "in light of the jury's determination that

12

[petitioner] was directly, not vicariously, liable for [victim's] murder"].)  In sum, the trial court's denial of Lee's request for the appointment of counsel was harmless.  (See *Lewis*, *supra*, 11 Cal.5th at 973-974.)

### B. *The Firearm Enhancement*

In Lee's supplemental brief, rather than raise any issue concerning the trial court's order denying his petition to vacate his murder conviction, he requests relief from the firearm enhancement.  Lee observes that Senate Bill No. 620 (SB 620) granted trial courts new discretion -- effective January 1, 2018 -- to strike firearm enhancements in the interest of justice.  (Pen. Code, § 12022.53, subd. (h); Stats. 2017, ch. 682, § 2.)  Lee also requests that we review his case "under the new statute and limitation effective February 2021, under the removal of 'all' enhancements."

Even assuming, arguendo, that this appeal from the order denying Lee's petition to vacate his murder conviction is a proper vehicle for Lee's request for relief from the firearm enhancement, Lee fails to show he is entitled to such relief, or to the trial court's consideration of such relief on remand.  SB 620 does not apply to a judgment like Lee's, which was final before SB 620 went into effect on January 1, 2018.  (See *People v. Hargis* (2019) 33 Cal.App.5th 199, 209 ["Senate Bill No. 620 and the associated amendment to section 12022.53 apply retroactively to *nonfinal* cases"]; *People v. Harris* (2018) 22 Cal.App.5th 657, 659, fn. 2 [where defendant appeals judgment, it becomes final when time for

13

petitioning the United States Supreme Court for writ of certiorari expires].)  Although Lee appears to reference a purported law that went into effect in February 2021 and required or authorized relief from the firearm enhancement, our research has uncovered no such law.[3]

<hr />

[3] We are aware of a bill *introduced* in February 2021 that proposes amendments to firearm-enhancement statutes, including a reduction of the length of the 25-years-to-life enhancement under Penal Code section 12022.53, subdivision (d), to three years.  (Assem. Bill No. 1509 (2021-2022 Reg. Sess.) § 27, as introduced Feb. 19, 2021.)  The bill has not been enacted into law.

## DISPOSITION

The order denying Lee's petition for relief under Penal Code section 1170.95 is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.